ORIGINAL

KAREN P. HEWITT
United States Attorney
CHRISTINA M. McCALL
Assistant United States Attorney
California Bar Number 234139
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6760
Facsimile: (619) 235-2757

Attorneys for Plaintiff
United States of America

FILED

08 JAN -8 PM 2:19

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> YVONNE ANN MARTINEZ, <br><br> Defendant. | Criminal Case No. 07CR3354-L <br><br> UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO: <br><br> (1) COMPEL DISCOVERY AND PRESERVE EVIDENCE; <br> (2) DISMISS INDICTMENT DUE TO IMPROPER GRAND JURY INSTRUCTION; AND <br> (3) FILE FURTHER MOTIONS <br><br> ALONG WITH UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY <br><br> Date: January-14, 2007 <br> Time: 2:00 p.m. <br> Honorable: James Lorenz |

    Plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Christina M. McCall, Assistant United States Attorney and hereby files its Response and Opposition to Defendant's Motions and its Motion for Reciprocal Discovery. This Response and Opposition is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

# I

# STATEMENT OF FACTS

## A. Defendant's Apprehension

On November 16, 2007, around 3:00 a.m., defendant, Yvonne Ann Martinez, entered the San Ysidro port as the driver and sole visible occupant of a blue 1998 Ford Explorer bearing California license plates. The vehicle registration slip revealed that the Explorer had been registered in Defendant's name on November 14, 2007. Defendant handed Officer Clark a California identification card in her name, and claimed to be a United States citizen. Defendant said she was not bringing back anything from Mexico. When asked the purpose of her trip to Mexico, Defendant said that she was visiting her husband. When asked who owned the Explorer, Defendant said she was the owner. Officer Clark checked the computer records and noticed that the vehicle had no history of crossing the border in the six months preceding Defendant's entry.

Officer Clark conducted a cursory inspection of the Explorer and immediately noticed a strong odor of gasoline. Officer Clark then inspected the fuel line that runs from the fuel-filler door and noticed that the fuel line appeared to have been tampered with. Officer Clark then checked the fuel tank, located under the driver's side of the Explorer, and saw a non-factory piece of sheet metal where the gas tank should have been located. Officer Clark then saw two feet sticking out of the front part of the non-factory compartment. Officer Clark then instructed Defendant to turn the vehicle off and place her hands on the steering wheel and called for assistance. Officer Clark removed Defendant from the Explorer and placed her in handcuffs. The secondary officers arrived and took Defendant to the security office.

Officer Skiles drove Defendant's Explorer to the vehicle secondary lot. There, Officers Rios and Esparagoza took photographs of the Explorer and the compartment. Inside the compartment were two women, material witnesses Guadalupe Cid-Escalante and Maria Juarez-Ceron. These women were Mexican citizens with no right to enter the United States. The Explorer's alternate fuel source, since the gas tank area was turned into an alien-smuggling compartment, was a small gas can concealed in the passenger side panel, where the speaker should be located. The officers lifted the rear seats forward and could see the two women inside the compartment. The women were able to pull themselves out of the compartment only after the officers held the seat forward.

Defendant acknowledged her <u>Miranda</u> rights and agreed to speak to officers without the presence of an attorney. Defendant said that her father bought the Explorer for her in San Ysidro a couple of weeks before her arrest, for about $2,000. The address on the California vehicle registration printout did not match Defendant's home address. When confronted with this discrepancy, Defendant said she did not know whose address appeared on the Explorer's registration form.

Defendant said she had been in Mexico, visiting her common law husband who resides in Ensenada. Defendant said she drove the Explorer from her home in Rosemead, California on Monday, November 12, 2007 and parked it in a twenty-four hour parking lot. Defendant said she took a bus from Tijuana to Ensanada, and that she usually makes a similar trip to visit her husband every two to three weeks. Defendant explained that she had been unemployed for about ten years and that she lives with her parents, but her husband provides her with money. Defendant said that her husband is currently building an orphanage in Ensanada and received about $150 per week for his work.

Defendant said that, on the night before her arrest, she had dinner with her husband in Ensanada, then returned to the Explorer in Tijuana. Defendant said she planned to drive to her mother's house in Rancho Cucamonga. Defendant said that the Explorer was parked in the same location where she had parked it days earlier, that it was locked, and that she was the only one who had the keys. Defendant said she smelled an odor of gasoline while driving, but claimed she did not know why there was such a smell. Defendant acknowledged any knowledge of the people concealed inside the vehicle.

Officers interviewed Guadalupe Cid-Escalante. Cid stated that she is a Mexican citizen by birth, from Mexico City. Cid said that she has no legal entitlement to enter the United States. Cid said that she arrived in Tijuana about a week before her apprehension, on a bus. After staying at a hotel, an unknown man picked up Cid around 1:00 a.m. in a taxi and took her to a house. There, a man instructed her to enter the compartment with another woman. Cid overheard one of the men say that a female would be driving. Cid said Adriana made the smuggling arrangements by telephone on November 15. Cid said she planned to pay an unknown amount of money to be smuggled into the United States, and planned to travel to Los Angeles.

Next, officers interviewed Maria Juarez-Ceron. Juarez said she is a Mexican citizen by birth, from Puebla, Mexico. Juarez also said that she has no legal entitlement to enter the United States.

Juarez said she arrived in Tijuana two days before her apprehension and went to a hotel. An unknown man picked her up at the hotel around 1:00 a.m. in a taxi and took her to a house. There, Juarez was placed in the compartment. Juarez said that a friend made the arrangements with the smugglers, and that Juarez expected to pay a smuggling fee of $2,000.

On December 12, 2007, a federal grand jury for the Southern District of California returned a four-count Indictment against Defendant, charging her with: (1) bringing in an illegal alien-- Guadalupe Cid-Escalante-- for financial gain, in violation of Title 8 U.S.C. § 1324(a)(2)(B)(ii); (2) bringing in an alien-- Guadalupe Cid-Escalante-- without presentation, in violation of Title 8 U.S.C. § 1324(a)(2)(B)(iii); (3) bringing in an illegal alien-- Maria Juarez-Ceron-- for financial gain, in violation of Title 8 U.S.C. § 1324(a)(2)(B)(ii); and (4) bringing in an alien-- Maria Juarez-Ceron--without presentation, in violation of Title 8 U.S.C. § 1324(a)(2)(B)(iii). At the arraignment on the Indictment on December 13, 2007, Defendant entered a not-guilty plea.

## II

### UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS

A.      ORDER COMPELLING DISCOVERY IS UNNECESSARY

   No Order is Required; The United States is Complying With Discovery Obligations

The United States has produced 88 pages of discovery as of the filing of this response, as well as a digital video recording of Defendant's post-arrest Miranda warnings and the interview with the material witnesses. The United States has complied and will continue to comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500), and Federal Rule of Criminal Procedure 16. Because the United States has complied and will comply with its discovery obligations, an order to compel discovery is unwarranted and the request for such an order should be denied.

   1.      Brady Material

The United States will comply with its obligations to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963). Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the government need not disclose "every bit of information that might affect the jury's decision." United

States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. Id. "Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense." United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001). Impeachment evidence may constitute Brady material "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks omitted).

  2. 404(b) Evidence

  The United States will disclose sufficiently in advance of trial the general nature of any prior acts evidence that it intends to introduce at trial pursuant to Federal Rule of Evidence 404(b).

  3. Preservation of Evidence

  The United States will preserve all evidence to which the defendant is entitled to pursuant to the relevant discovery rules. The United States objects to a blanket request to preserve all physical evidence.

  4. Defendant's Statements

  The United States has already provided defense counsel with incident reports detailing Defendant's brief statements in primary, as well as a DVD recording of her post-arrest interview.

  5. Tangible Objects

  The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

  6. Expert Witnesses

  The United States will comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendant with notice and a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence.

  7. Witness Addresses

  The United States will provide the names of the witnesses it intends to call at trial. Similarly, the government trusts that Defendant will provide the names of the witnesses he intends to call.

Defendant has already been provided access to the names of potential witnesses through the discovery sent to her counsel. The United States objects to Defendant's request for witness addresses. No cases cited by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses. The United States does not know of any individuals who were witnesses to Defendant's offenses except the law enforcement agents who apprehended her and the material witnesses. The names of these individuals have already been provided to Defendant.

8.   Jencks Act Material

The United States has or will comply with the disclosure requirements of the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). By the same token, rough notes by an agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

The United States is not aware of any dispatch tapes containing Jencks Act material in this case.

9.   Informants and Cooperating Witnesses

At this time, the United States is not aware of any confidential informants or cooperating witnesses involved in this case, other than the two women identified and held as material witnesses. The government must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). These threshold requirements have been interpreted to require that, if any cooperating witnesses or informants were involved or become involved, Defendant must show that disclosure of the informer's identity would be "relevant and helpful" or that the informer was the sole percipient witness before he would even be entitled to an in-camera evidentiary hearing regarding disclosure of the informer's identity. United States v. Jaramillo-Suarez, 950 F.2d 1378, 1386-87 (9th Cir. 1991), quoting

1  Roviaro v. United States, 353 U.S. 53, 60 (1957). Any bias issues will be handled pursuant to Brady.

2      10.    Scientific Requests

3      a. Request for TECS

4  Any reports generated from TECS that the United States intends to use in its case-in-chief
5  will be provided as discorey in advance of trial

6      b. Request to view the car

7  This request is addressed in Item 5, above.

8      c. Request to view the cellular phone

9  To the extent that such a cellular phone even exists in this case, this request is addressed
10 in Item 5, above.

11     d. Request for access to A-files

12 The United States will conduct a review of the two material witnesses' alien files to
13 determine if any potentially exculpatory evidence is contained within them.

14     e. Request for expert disclosure

15 In advance of trial, the Government will turn over any scientific reports and identify any
16 experts it intends to call at trial.

17     11.    Residual Request

18 As stated above, the United States will comply with its discovery obligations in a timely manner.

19

20 **B.   THE INSTRUCTIONS GIVEN TO THE GRAND JURY DURING IMPANELMENT DID**
21       **NOT DEPRIVE DEFENDANT OF AN IMPARTIAL GRAND JURY**

22 The Government incorporates by reference the Government's response and opposition regarding
23 this exact issue in United States v. Martinez-Covarrubias, 07CR0491-BTM. This motion has been
24 denied by each court that has considered it. Also incorporated by reference is this Court's order denying
25 the motion to dismiss in case 07CR0491-BTM.

26

27 //

28

I.  **LEAVE TO FILE FURTHER MOTIONS**

The United States does not oppose Defendant's request for leave to file further motions, so long as such motions are based on discovery not yet received by Defendant.

### III

### UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY

Defendant has invoked Fed. R. Crim. P. 16(a) and the United States has voluntarily complied with the requirements of Rule 16(a). Therefore, provision 16(b) of that rule, requiring reciprocal discovery, is applicable. The United States hereby requests Defendant to permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and which he intends to introduce as evidence in her case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which he intends to introduce as evidence-in-chief at the trial or which were prepared by a witness whom Defendant intends to call as a witness. The United States also requests that the court make such orders as it deems necessary under Rule 16(d)(1) and (2) to insure that the United States receives the discovery to which it is entitled.

Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all witnesses, except Defendant. The time frame established by the rule requires the statement to be provided after the witness has testified, as in the Jencks Act. The United States hereby requests that Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the court. This order should include any form these statements are memorialized in, including but not limited to, tape recordings, handwritten or typed notes and/or reports.

//

# V
# CONCLUSION

For the foregoing reasons, the United States respectfully requests that Defendant's motions, except where not opposed, be denied and the United States' motion for reciprocal discovery be granted.

DATED: January 7, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

*/s/ Christina M. McCall*

CHRISTINA M. McCALL
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) Case No. 07CR3354-L |
|---|---|
| Plaintiff, | ) |
| v. | ) **CERTIFICATE OF SERVICE** |
| YVONNE ANN MARTINEZ, | ) |
| Defendant. | ) |

IT IS HEREBY CERTIFIED that:

I, CHRISTINA M. McCALL, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101.

I am not a party to the above-entitled action. I have caused service of RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY, DISMISS INDICTMENT AND SUPPRESS STATEMENTS, ETC. on the following parties by ~~electronically filing~~ mailing the foregoing ~~with the Clerk of the District Court using its ECF System, which electronically notifies~~ them.

Robert Rexrode, Esq.
~~Tamara DeHaan, Esq.~~

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 7, 2008.

/s/ Christina M. McCall

CHRISTINA M. McCALL